UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUSAN MAE POLK,

    Plaintiff,

    v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Case No. 14-cv-4667-PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTIONS TO STRIKE**

    Plaintiff Susan Mae Polk brings this action for injunctive relief pursuant to the Freedom of Information Act, 5 U.S.C. § 552, against defendant Federal Bureau of Investigation ("FBI"). Before the court are cross-motions for summary judgment filed by plaintiff and defendant, and motions to strike filed by plaintiff. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS defendant's motion, and DENIES plaintiff's motions.

**THE FREEDOM OF INFORMATION ACT AND THE PRIVACY ACT**

    The Freedom of Information Act ("FOIA") requires federal agencies to disclose public information upon a citizen's request unless the information falls within exemptions from disclosure identified in 5 U.S.C. § 552(b). See 5 U.S.C. § 552(a)(1), (2) and (3); Oregon Natural Desert Association v. Locke, 572 F.3d 610, 614 (9th Cir. 2009). Where an agency refuses to produce requested information, FOIA permits an aggrieved party to file a civil action in federal district court requesting that the court order the agency to produce the information. See 5 U.S.C. 552(a)(4)(B).

1  The nine statutory exemptions listed in 5 U.S.C. § 552(b)(1)-(9) "must be narrowly construed." Lion Raisins, Inc. v. U.S. Dep't of Agriculture, 354 F.3d 1072, 1079 (9th Cir. 2004) (citation and quotation omitted). Moreover, even when material falls within one of FOIA's nine exemptions, an agency must disclose "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency invoking an exemption bears the burden of proving that it applies. Yonemoto v. Dep't of Veterans Affairs, 686 F.3d 681, 688 (9th Cir. 2012).

The Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a, regulates the disclosure by federal agencies of information about individuals. In general, the purpose of the Privacy Act is "to 'protect the privacy of individuals' through regulation of the 'collection, maintenance, use, and dissemination of information' by federal agencies." Rouse v. U.S. Dep't of State, 567 F.3d 408, 413 (9th Cir.2009) (citation omitted). The Privacy Act allows individuals the opportunity to review information about themselves that is maintained in federal agency records. Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1119-20 (D.C. Cir. 2007). An individual seeking information or records about himself/herself must file a Freedom of Information Privacy Act ("FOIPA") request with the appropriate agency. See 5 U.S.C. § 552a(d).

The Privacy Act provides civil remedies to individuals aggrieved by a federal agency's failure to comply with the requirements of the Act. Rouse, 567 U.S. at 413. Specifically, the Privacy Act permits two types of legal claims: (1) claims challenging the accuracy of information maintained by an agency (5 U.S.C. §§ 552a(e)(5) and (6), and 552a(g)(l)(C)); and (2) claims seeking access to information maintained by an agency (5 U.S.C. §§ 552a(d)(l) and 552a(g)(l)(B)). Id. at 413-414.

Although FOIA and the Privacy Act are distinct, and each "has its own functions and limitations," Greentree v. U.S. Customs Serv., 674 F.2d 74, 76 (D.C. Cir. 1982), there is considerable interplay between the two statutes vis-à-vis regulations concerning individuals and public access to such information. The Privacy Act was "designed to provide individuals with more control over the gathering, dissemination, and accuracy of

1  agency information about themselves," while FOIA was "intended to increase the public's
2  access to governmental information and was drafted with a strong presumption for
3  disclosure to allow public scrutiny of government processes."  See Pierce v. Dep't of U.S.
4  Air Force, 512 F.3d 184, 191 (5th Cir. 2007).  Working in combination, the two statutes
5  restrict the disclosure of personal information about an individual that might violate his
6  right to privacy but provide for allowing access to an individual to obtain his own records.
7  Although each statute contains different exemptions and exclusions, requests under
8  FOIA and FOIPA are generally treated the same in terms of the administrative procedure.

## BACKGROUND

10  This case arises from plaintiff Susan Mae Polk's request pursuant to FOIA for an
11  order compelling the Federal Bureau of Investigation ("FBI") to provide her with "all
12  records" to which she "may be entitled under the Freedom of Information Act in
13  connection with case No. 496768RB1."  Plaintiff submitted the original request, which
14  was dated June 18, 2013, to the FBI's field office at 450 Golden Gate Avenue, in San
15  Francisco, California.  She also provided her date of birth and social security number.
16  In 2006, plaintiff began serving a sentence in the custody of the California
17  Department of Corrections following a conviction for the second-degree murder of her
18  husband.  In the June 18, 2013 letter, plaintiff stated that she had discovered the
19  reference to case No. 496768RB1 "in reviewing materials for preparation of" her petition
20  for writ of habeas corpus.  She referred to case No. 496768RB1 as an "FBI case
21  number," and stated that she "wasn't aware [she] was under investigation or that there
22  was an FBI investigation associated with [her] name or [her] case."  She also stated that
23  she had submitted an earlier request in 2011, but had received no response.  (She has
24  provided no copy of any earlier request.)
25  When plaintiff received no response to her request for records and information
26  relating to case No. 496768RB1, she filed a motion for injunctive relief in her federal
27  habeas case – Polk v. Hughes, C-12-5986 VC (N.D. Cal.) – on July 10, 2014.  She
28  sought an order compelling the FBI to release copies of all records pertaining to its

investigation of her under case No. 496768RB1.  On September 9, 2014, the court denied the motion, on the basis that it was not filed in a lawsuit brought against the FBI.  On October 20, 2014, plaintiff filed the present action against the FBI.

In the "Application under the Freedom of Information Act (FOIA) for Injunction to Compel FBI to Release Records to Applicant" (Doc. 1), which the court construes as the complaint, plaintiff alleges that she was unaware she was "under investigation by the FBI" until she found the reference to the "FBI investigation number in Bail Study prepared by the Contra Costa County Probation Department in 2003."  Complaint ("Cplt") ¶ III(3).[1]

Plaintiff asserts that because she is "actually innocent and ha[s] never committed any crimes," she wants to know "what prompted the FBI investigation, what investigators found, how extensive their investigation was or has been, when it was initiated, and why there was or has been an investigation."  Cplt ¶ VI(1).  In addition, she wants to know "if FBI investigators were involved in the county's investigation of [her] husband's death, to what extent, and the basis for the bureau's involvement[,]" and whether "FBI investigators interviewed any of the witnesses or potential witnesses, in that case, who said investigators interviewed, and what transpired in those interviews."  Cplt ¶ VI(2).

Plaintiff also submitted a request for leave to proceed in forma pauperis, which was granted in an order issued on November 14, 2014.  The court directed that the Clerk issue summons, and that the U.S. Marshall for the Northern District of California serve the summons and complaint.

The FBI asserts that FOIA requests submitted to the FBI are processed at the FBI's Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia.  According to a declaration filed by David M. Hardy, the Section Chief of RIDS, in support of the FBI's motion for summary judgment, the FBI's

---

[1] Plaintiff attaches two pages that she asserts are part of the 2003 Contra Costa Bail Study.  The second of these pages lists plaintiff's name, date of birth, driver's license number, Social Security number, and the notation "FBI: 496768RB1."  (The complaint was subsequently filed under seal because it included personal identifying information, which under Federal Rule of Civil Procedure 5.2 was required to be redacted, and the court was unable to redact only that information.)

4

website directs that requestors send their FOIA requests to RIDS in Winchester, Virginia. See Declaration of David M. Hardy (Doc. 20-1 – "Hardy Decl.") ¶ 8.

Mr. Hardy, who supervises the employees at FBI Headquarters ("FBIHQ") who plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to FOIA, states that FBIHQ/RIDS did not learn of plaintiff's June 18, 2013, request until after she had filed the present lawsuit. Id.; see also Supplemental Declaration of David M. Hardy in support of FBI's opposition to plaintiff's motion for summary judgment (Doc. 43-1 – "Supp. Hardy Decl.") ¶ 6.

Mr. Hardy adds that because plaintiff's request was mailed to the San Francisco Field Office, "there was an apparent oversight in routing the request to FBIHG/RIDS for handling." Hardy Decl. ¶ 8; see also Hardy Supp. Decl. ¶ 8. He asserts that RIDS took action immediately upon receipt of plaintiff's lawsuit to locate plaintiff's request at the San Francisco Field Office, and did locate the request through communication with the Field Office. Hardy Supp. Decl. ¶ 8.

By letter dated January 20, 2015, the FBI acknowledged receipt of plaintiff's request, and stated that it was searching the indices to the Central Records System for information responsive to her request. Hardy Decl. ¶ 9. In his declarations, Mr. Hardy describes in considerable detail the FBI's Central Records System ("CRS")[2] and the search for information responsive to plaintiff's request, undertaken by RIDS in the CRS. Id. ¶¶ 11-20; Supp. Hardy Decl. ¶¶ 5-9.

First, after unsuccessfully searching for any reference to "496768RB1," RIDS determined that the alleged "FBI case number" listed in the June 18, 2013 FOIA/FOIPA request did not correspond to the case file numbers, or components thereof, that the FBI uses when a case file is opened. Hardy Decl. ¶¶ 12, 19; Hardy Supp. Decl. ¶ 10.

---

[2] Mr. Hardy explains that the CRS is comprehensive in nature and scope, as it is where the FBI indexes information about individuals, organizations, events, and subjects of investigative interest. Hardy Decl. ¶¶ 11-13. It "spans the entire FBI organization" and encompasses the records of FBIHQ, FBI Field Offices, and FBI Legal Attaché Offices worldwide. Id. ¶ 11.

1   Rather, as RIDS learned from an inquiry to the FBI's San Francisco Field Office and the
2   Criminal Justice Information Services ("CJIS") section, the number "496768RB1"
3   referenced a request made by local law enforcement to the FBI for a criminal history
4   summary (also known as a "rap sheet") of plaintiff.  Hardy Decl. ¶ 19 & n.4; Supp. Hardy
5   Decl. ¶ 10.
6         Mr. Hardy explains that the arrest data included in a "rap sheet" is obtained from
7   information submitted to the FBI from agencies having criminal justice responsibilities.
8   Hardy Decl. ¶ 19 n.4.  The FBI does not maintain copies of "rap sheets" requested by
9   local law enforcement, and the fact that the FBI may have received a request for an
10  individual's "rap sheet" does not mean that the individual is or ever was of investigative
11  interest to the FBI.  Hardy Decl. ¶ 19 n.4; Supp. Hardy Decl. ¶ 10.
12        Second, RIDS conducted a search via its automated and manual indices for both
13  main files and cross-reference records relating to plaintiff's FOIA request for records on
14  herself and subject to FOIA, using variations of plaintiff's name in combination with her
15  Social Security number and date of birth.  Hardy Decl. ¶¶ 17-20.
16        According to Mr. Hardy, the FBI's search located no main file records (records
17  from files in which plaintiff was the subject of investigation, but returned twelve cross-
18  reference records (records contained in a main file record about a different subject).  Id.
19  ¶ 19.  The records consisted of "Airtels" (FBI documents used to communicate
20  information between FBIHQ and the field offices regarding investigations) and letters
21  concerning the FBI's investigation of allegations of criminal activity involving a third-party
22  victim and third-party individuals of investigative interest during the period 1986-1988.  Id.
23  ¶ 33 & Exh. D.  Mr. Hardy states that there was no indication from the information located
24  as a result of the FBI's search of the automated and manual indices of the CRS that
25  responsive material would reside in any other FBI system or location.  Id. ¶ 20.
26        By letter dated January 29, 2015, the FBI released records to plaintiff.  Id. ¶ 10.
27  These were the twelve cross-referenced records described above.  The FBI advised that
28  it had reviewed 47 pages of records and was releasing 45 pages in full or in part, with

6

1  certain information withheld pursuant to Privacy Act and FOIA exemptions. Id. In his
2  declaration, Mr. Hardy describes the documents and the basis for the exemptions under
3  which it redacted or withheld certain information. Id. ¶ 33. The redactions and
4  withholdings were based on FOIA exemptions 3 (pen register information protected by
5  statute), 6 and 7(C) (names and identifying information about third parties, the disclosure
6  of which would constitute an unwarranted invasion of personal privacy), and 7(D)
7  (information compiled for law enforcement purposes that would disclose techniques and
8  procedures of law enforcement investigations or prosecutions). See id. (citing 5 U.S.C.
9  § 552(b)(3), (6), (7)(C), and (7)(D)).

10  Plaintiff was informed she could appeal the FBI's determination by filing an
11  administrative appeal with the Department of Justice ("DOJ") Office of Information Policy
12  ("OIP") within 60 days from the date of the letter. Id. There is no evidence that plaintiff
13  did so.

14  Each side now seeks summary judgment. Plaintiff also seeks an order striking the
15  Hardy Declaration, and an order striking the FBI's opposition to her motion.

16  **DISCUSSION**
17  A.   Legal Standard
18  A party may move for summary judgment on a "claim or defense" or "part of . . . a
19  claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there
20  is no genuine dispute as to any material fact and the moving party is entitled to judgment
21  as a matter of law. Id.

22  "FOIA cases are typically and appropriately decided on motions for summary
23  judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F.Supp.2d 83, 87 (D.D.C.
24  2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F.Supp. 2d 68, 73 (D.D.C. 2007).
25  However, because FOIA cases rarely involve issues of disputed fact, the court need not
26  utilize the typical summary judgment standard. See Hajro v. U.S. C.I.S., 807 F.3d 1054,
27  1065 (9th Cir. 2015); see also Yonemoto, 686 F.3d at 688; Minier v. CIA, 88 F.3d 796,
28  800 (9th Cir. 1996). Instead, the court conducts a two-step inquiry.

First, the court weighs whether the agency has established that it fully discharged its obligations under FOIA. Zemansky v. U.S. E.P.A., 767 F.2d 569, 571 (9th Cir. 1985). An agency can establish this by showing that it conducted a search reasonably calculated to uncover all relevant documents. Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 5145 (D.C. Cir. 2011); Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 986 (9th Cir. 2009); Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). An agency may make this showing through "reasonably detailed, nonconclusory affidavits submitted in good faith." Zemansky, 767 F.2d at 571 (citation omitted).

A search need not be exhaustive. See Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985); Shaw v. U.S. Dep't of State, 559 F.Supp. 1053, 1057 (D.D.C. 1983). As long as the agency conducts a reasonable search, it fulfills its obligations under FOIA, even if the search yields no responsive records. See Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003); Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Zemansky, 767 F.2d at 571. In considering whether an agency made an adequate search for records pursuant to FOIA, the facts must be viewed in the light most favorable to the requestor. Weisberg, 745 F.2d at 1485.

If the agency meets this burden, the court then considers whether the agency has shown that any information not disclosed falls within one of the FOIA exemptions. Where the government withholds documents pursuant to one of the nine enumerated exemptions, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); see U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Dobronski v. F.C.C., 17 F.3d 275, 277 (9th Cir. 1994). "A basic policy of FOIA is to ensure that Congress and not administrative agencies determines what information is confidential." Lessner v. U.S. Dep't of Commerce, 827 F.2d 1333, 1335 (9th Cir. 1987). For this reason, the courts do

8

1  not give deference to a federal agency's determination that the requested information
2  falls under a particular FOIA exemption.  Carlson v. U.S. Postal Serv., 504 F.3d 1123,
3  1127 (9th Cir. 2007).

B. Motions for Summary Judgment

In her motion, plaintiff argues that she is entitled to judgment as a matter of law because the FBI has admitted in its answer to the complaint that it failed to respond to her request within the time specified in 5 U.S.C. § 552(a)(6)(A)(i), and because the FBI failed to provide a Vaughn index.

The FBI argues in its motion that it conducted an adequate search, and found no records pertaining to any investigation of plaintiff; and that as to the records it located regarding the third-party investigation in the period 1986-1988, it had properly redacted or withheld certain information pursuant to FOIA exemptions 3, 6, 7(C), and 7(D), and had met FOIA's segregability requirement.

The court finds that plaintiff's motion must be DENIED and that the FBI's motion must be GRANTED. The primary issue raised in plaintiff's motion is that the FBI did not produce records from a purported "active investigation by the FBI associated with [plaintiff's] name," case number "496768RB1." The motion is thus based on the baseless speculation that the reference to "FBI: 496768RB1" on a single page of an unauthenticated bail study prepared during a state criminal case against plaintiff means that she was or is under FBI investigation, and that an "FBI investigative file" pertaining to such investigation exists.

The FBI has demonstrated that no such investigative file exists. The undisputed evidence shows that "496768RB1" does not correspond to an FBI investigative file, and that the number instead refers to a request made to the FBI by a local law enforcement agency for a criminal history check (or "rap sheet") on plaintiff. Further, the evidence shows that the FBI does not routinely maintain a copy of "rap sheets" within its investigative files, and here, that the FBI did not locate a "rap sheet" on plaintiff in any FBI investigative file.

9

It is also undisputed that the FBI conducted a reasonable and adequate search in response to what it properly determined was a FOIA/FOIPA request. To meet its burden in a FOIA case, an agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Anderson v. Fed. Bureau of Prisons, 806 F. Supp. 2d 121 (D.D.C. 2011). These affidavits should generally "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched." Mobley v. CIA, 806 F.3d 568, 580-81 (D.C. Cir. 2015) (citation and quotation omitted).

In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate the agency's compliance with FOIA. Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982); Anderson, 806 F. Supp. 2d at 126. Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith. Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 770-71 (9th Cir. 2015). This presumption of good faith cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

The court finds that the search as described by Mr. Hardy in his declarations was reasonable and diligent, and sufficient to have located any files in which plaintiff was the subject of FBI investigation (i.e., an FBI main file on plaintiff), had any such files existed. In addition, however, the FBI has shown, through Mr. Hardy's declarations (signed under penalty of perjury) that no such records were located. The only records located that reference plaintiff involve what appears to have been a request in 1985 that the FBI investigate what plaintiff and/or her husband believed was criminal activity involving third parties.

Plaintiff's entire argument is premised on her unsupported belief that the reference to "496768RB1" in the Contra Costa County Probation Department Bail Study is a reference to an FBI investigation of her. However, she fails to rebut the FBI's showing that "496768RB1" refers to the County's request for a "rap sheet," and more importantly,

10

fails to identify any deficiency in the FBI's search methodology and fails to challenge the propriety of the exemptions claimed by the FBI in connection with the records it did locate and provide to her.[3]

Plaintiff is not entitled to judgment on the grounds that the FBI was late in responding to her June 18, 2013, FOIA/FOIPA request. Under 5 U.S.C. § 552(a)(6)(A), "[e]ach agency, upon any request for records . . . shall . . . determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request, and shall immediately notify the person making such request of such determination and the reasons therefor . . . ." The FBI has established that because plaintiff did not submit the request to RIDS in Virginia, pursuant to the detailed instructions on the FBI's website regarding FOIA/FOIPA requests, it was unaware that plaintiff had submitted the request until the complaint in the present action was served, with a copy of the request attached.

It is true that approximately eight weeks elapsed between the time the FBI was properly served and January 20, 2015, when it sent plaintiff a letter acknowledging her request. However, by January 29, 2015, the FBI had completed its search and had provided plaintiff with the records located during that search. Given that plaintiff's sole request was for "all records to which I may be entitled under the Freedom of Information

---

[3] Instead, plaintiff argues at some length in her papers that the records provided by the FBI relating to the 1985 investigation – as to which the FBI claimed the FOIA exemptions – are "irrelevant" and non-responsive to her FOIA request. Thus, the court need not consider the propriety and applicability of the claimed exemptions. Similarly, the court need not consider plaintiff's claim that the FBI violated its FOIA obligations by failing to provide a Vaughn index. A Vaughn index, derived from Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), is a list "identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." See Wiener v. F.B.I., 943 F.2d 972, 977 (9th Cir.1991). In Vaughn, the court held that an agency could be required to produce an index when agency withholds information in its response to valid FOIA request. 484 F.2d at 826-28. However, where a declaration explains in detail an agency's justifications for withholding information, and establishes that the requested information need not be disclosed, a Vaughn index is not required. See Fiducia v. U.S. Dep't of Justice, 185 F.3d 1035, 1042-43 (9th Cir. 1999); Weiner, 943 F.2d at 978; King v. U.S. Dep't of Justice, 772 F.Supp.2d 14 (D.D.C. 2010). Here, not only has plaintiff failed to challenge the propriety of the claimed exemptions, but the Hardy Declaration lays out in sufficient detail the justifications for the FBI's withholdings.

11

1  Act in connection with case No. 496768RB1," and that RIDS located no investigative file
2  involving plaintiff, no file with the number "496768RB1," and no records showing any
3  FOIA/FOIPA requests submitted by plaintiff prior to June 18, 2013, and also given that
4  RIDS promptly provided plaintiff with the only records it did locate that referenced her by
5  name – the 1986-1988 records involving the third-party investigation – the court finds no
6  basis for concluding that the FBI's response constituted unreasonable delay.

7  In addition, plaintiff's complaint requests injunctive relief in the form of an order
8  directing the FBI to respond to her request.  The FBI has responded and has informed
9  plaintiff that no FBI case exists with the number "496768RB1." "[F]ederal courts have no
10 further statutory function to perform" once all requested records are surrendered.  Perry
11 v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982).  Moreover, a plaintiff who does not allege
12 any improper withholding of records fails to state a claim for which the court has
13 jurisdiction under FOIA.  Goldgar v. Office of Admin., Executive Office of the President,
14 26 F.3d 32, 34, (5th Cir. 1994).  It is the agency's burden to prove the non-existence of
15 the records sought, id., and the court finds that the FBI has met this burden.  Accordingly,
16 plaintiff's claim for injunctive relief under FOIA is moot.[4]

## CONCLUSION

18 In accordance with the foregoing, plaintiff's motion for summary judgment is
19 DENIED, and the FBI's motion is GRANTED.  Plaintiff's objections to the FBI's reply to
20 plaintiff's opposition to the FBI's motion are OVERRULED.

21 The motion to strike the Hardy Declaration is DENIED as procedurally improper,
22 whether the motion is considered as an objection to evidence provided by the FBI in
23 support of its motion, see Civ. L.R. 7-3(a), or as a request for Rule 11 sanctions, see Fed.
24 R. Civ. P. 11(c)(2).  Moreover, the court finds that the objections to the declaration are
25 baseless.

---

[4] As for plaintiffs' argument that she is entitled to an award of costs, FOIA allows for an award of reasonable attorney fees and litigation costs only where a complainant "has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).  As plaintiff has not prevailed in this action, she is not entitled to costs.

The motion to strike portions of the FBI's opposition to plaintiff's motion is DENIED, as the court finds, pursuant to the discussion at 1-3, above, with regard to FOIA/FOIPA, that the FBI reasonably construed plaintiff's request for records pertaining to what she believed was a criminal investigation of herself as a FOIPA request. For the same reason, the motion to strike the references in the Supplemental Hardy Declaration to plaintiff's "FOIPA request" is DENIED. The remainder of the motion to strike the Supplemental Hardy Declaration is baseless, to the extent it is comprehensible, and is therefore DENIED.

**IT IS SO ORDERED.**

Dated: January 7, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge